IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

R.B. AND V.B.,

      Plaintiffs,                    11cv1519
                                          **ELECTRONICALLY FILED**

      v.

WESTMORELAND COUNTY, ET AL.,

      Defendants.

**MEMORANDUM OPINION RE: DEFENDANTS' MOTION TO DISMISS
(DOC. NO. 10)**

### I. Introduction

Presently before this Court is the Motion to Dismiss filed by Defendants Westmoreland County ("Westmoreland"), Westmoreland County Children's Bureau ("WCCB"), John Cerra ("Cerra"), Karen Gilmore ("Gilmore"), and Kimberly Poppa ("Poppa"), individually and in their capacity as employees of WCCB (collectively referred to as "County Defendants").[1] Doc. No. 10. The Court has reviewed Plaintiffs' Complaint (Doc. No. 1), Defendants' Motion to Dismiss (Doc. No. 10) and Brief in Support Thereof (Doc. No. 11) as well as Plaintiffs' Brief in Opposition (Doc. No. 14).[2] For the reasons that follow, Defendants' Motion to Dismiss will be GRANTED.

---

[1] For clarity, throughout the Opinion "individual Defendants" will be used to refer to Defendants Cerra, Gilmore, and Poppa. This does not include individual Defendants Christine or Barry O'Neal, Sr. who have not filed a Motion to Dismiss.

[2] The Court has subject matter over this matter pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

## II. Statement Of The Facts

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, at this stage the Court accepts all of the factual allegations in the Complaint as true and all reasonable inferences are drawn in Plaintiffs' Favor. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Taking the Plaintiffs' factual allegations as true soley for the purposes of this Memorandum Opinion, the facts of this case are as follows:

Plaintiffs R.B. and V.B. are the parents and natural guardian of their daughter A.B., a minor. Doc. No. 1 ¶¶ 1, 2. Defendant WCCB is a local government agency of Westmoreland County (*Id.* at ¶ 4) and Defendant Westmoreland County is a local government subdivision pursuant to the laws of the Commonwealth of Pennsylvania. *Id.* at ¶ 5. Defendant Cerra is a caseworker supervisor, Defendant Gilmore is a caseworker and screener, and Defendant Poppa is a caseworker supervisor. *Id.* at ¶¶ 6-8. They are all adult individuals and at all times relevant were employed by the Defendant, WCCB in Westmoreland County. *Id.*

On May 9, 2010, Plaintiffs' daughter, A.B., ran away from her family's home after she was confronted by her father, R.B., with suspicion that she was having sexual relations with an older man. *Id.* at ¶ 11. R.B. subsequently called Rostraver Township Police and reported A.B. missing. *Id.* at ¶ 13.

A.B. went to the home of Barry O'Neal, Jr., a 20 year old male, with whom A.B. was having sexual relations. *Id.* at ¶ 14. Defendant Christine O' Neal,[3] the mother of Barry O'Neal, Jr., became aware of her son's relationship with A.B. and was concerned that A.B. would report her son to authorities because of their sexual relationship. *Id.* at ¶¶ 15, 16. In order to prevent A.B. from exposing their relationship to authorities, Christine O'Neal devised a plan to control

---

[3] Defendant Christine O'Neal did not file a Motion to Dismiss.

supervision over A.B. by convincing her to go to authorities and falsely report that her father, R.B., attempted to rape her. *Id.* at ¶¶ 17, 18. Defendant Barry O' Neal, Sr.[4] was present when his wife concocted the false story and condoned such behavior without any interjection. *Id.* at ¶ 20.

With the assistance of Christine O' Neal, A.B. filed a police report with the Rostraver Police Department and falsely reported to Officer Kerry August ("August") that her father, R.B., had sexually abused her. *Id.* at ¶ 21. Defendant WCCB opened an investigation and allowed A.B. to return to the O'Neal home to live after a background check was performed on the O'Neal family. *Id.* at ¶¶ 24, 25. R.B. and V.B. were notified that A.B. had been found, she was staying at the O'Neal's, and they were the subject of child abuse allegations. *Id.* at ¶¶ 26, 27. Defendant Gilmore then informed R.B. and V.B. that their daughter could not stay with them and if A.B. were placed in foster care, then they would have to pay child support. *Id.* at ¶ 28. R.B. and V.B. agreed to let A.B. stay at the O'Neal residence. *Id.* at ¶ 29.

On May 9, 2010, R.B. called Defendant Gilmore and informed her that he had found out that his daughter, A.B., was dating 20 year old Barry O'Neal Jr., and if true, asked for him to be arrested for dating his 15 year old daughter. *Id.* at ¶ 30. Gilmore met with A.B. and Barry O'Neal Jr. that same day, but took no action to remove A.B. from the O'Neal home even though she was aware that some type of relationship had occurred between the two. *Id.* at ¶ 32.

On or about May 12, 2010, R.B. met with Officer August of the Rostraver Police Department and WCCB employee Defendant Cerra. *Id.* at ¶ 33. R.B. denied all allegations of sexual abuse against A.B. and averred his daughter was fabricating her story so she could continue living with Barry O'Neal Jr. *Id.* at ¶¶ 34, 35. Defendant Cerra ignored R.B.'s concerns

---

[4] Defendant Barry O'Neal, Sr. did not file a Motion to Dismiss.

and objections and acquiesced to A.B. remaining at the O'Neal residence and informed R.B. and V.B. they were to have no contact with their daughter while the investigation was taking place. *Id.* at ¶¶ 36-38.

On or about May 12, 2010, Defendant Cerra interviewed A.B. at her school and determined that her story was suspicious and fabricated, yet he continued to allow her to remain in the O'Neal home. *Id.* at ¶¶ 42-44.

On or about May 17, 2010, Defendant Cerra conducted a 10 Day Supervisor Review with Defendant Poppa to report that A.B.'s allegations were false and inconsistent. *Id.* at ¶¶ 46, 47. Thereafter, on May 26, 2010, Defendant Poppa conducted a 10 Day Supervisor Review and approved keeping A.B. in the O'Neal home even though she was informed that A.B. had "gone out" with Barry O'Neal, Jr. and that A.B's accusations against her father were fabricated. *Id.* at ¶¶ 48, 50.

At that meeting, Defendant Cerra informed R.B. and V.B. that Barry O'Neal, Jr. was not residing in the house where A.B. was staying. *Id.* at ¶ 54. Several weeks later A.B. told Defendant Cerra that, in fact Barry O'Neal, Jr. remained in the O'Neal residence. *Id.* at ¶ 57. Defendant Cerra subsequently followed up with Christine O'Neal about her son's living arrangements, and she accused A.B. of being difficult to live with and coming onto Barry O'Neal Jr. *Id.* at ¶¶ 58, 59.

During her stay at the O'Neal house, A.B. was sexually assaulted multiple times by Barry O'Neal, Jr. *Id.* at ¶ 62. Additionally, Barry O'Neal Jr. threatened A.B. at gunpoint and told her not to tell anyone about their relationship. *Id.* at ¶¶ 65, 66.

On or about June 8, 2010, Defendant Cerra called R.B. and told him to take his daughter back or risk being charged with the initial sexual abuse allegations against him, even though

Defendant Cerra knew these allegations to be unfounded. *Id.* at ¶¶ 69, 70. Although WCCB was to return A.B. to her parent's residence, Defendant Christine O'Neal brought A.B. to the family home and dropped her off. *Id.* at ¶ 73.

After A.B. was returned home, Sara Collins ("Collins"), a contract caseworker from Youth Justice Works who is contracted by WCCB, visited her. *Id.* at ¶ 74. At the first meeting, A.B. told Collins her initial fabricated story about her father R.B., but during a second meeting, A.B. revealed that: (1) the allegations against her father were false; and (2) she had been sexually assaulted several times by Barry O'Neal Jr. while living in the O'Neal home. *Id.* at ¶¶ 75, 76. A.B.'s admissions were then disclosed to her parents. *Id.* at ¶ 77.

Barry O'Neal Jr. was subsequently charged with Involuntary Deviant Sexual Assault on a person less than 16 years of age; Statutory Sexual Assault; Aggravated Indecent Assault; Corruption of Minors; and Unlawful Contact with a Minor. *Id.* at ¶ 78. He pleaded guilty to Statutory Sexual Assault, Indecent Assault on a Person less than 16 Years of Age, Corruption of Minors, and Unlawful Contact with a Minor. *Id.* at ¶ 79. On August 26, 2011, Barry O'Neal Jr. was sentenced to a minimum of one year less than a day to two years less than a day for Statutory Sexual Assault and three years probation for Unlawful Contact with a Minor. *Id.* at ¶ 80.

A.B. suffered from physical abuse, sexual abuse, emotional abuse, and threats during her stay in the O'Neal home. *Id.* at ¶ 81. Furthermore, the County Defendants took A.B. into custody without adherences to any of the procedural safeguards involved in the Juvenile Act and the Child Protective Services Law and as a result A.B. suffered severe physical and mental hardships while living in the O'Neal home. *Id.* at ¶¶ 82, 83. Plaintiff A.B. was never abused

until County Defendants mandated she stay at the O'Neal home, and she now suffers from post-traumatic stress disorder and recurrent flashbacks. *Id.* at ¶¶ 84- 86.

As a result of County Defendant's actions, Plaintiffs R.B. and V.B. will continue to suffer psychological damage, destruction of family unit, loss of income, and attorney's fees and court costs. *Id.* at ¶ 93. Plaintiff A.B. has suffered and will continue to suffer physical and sexual assault, psychological damage, destruction of family unit, and attorney's fees and court costs. *Id.* at ¶ 94.

### III. Standard Of Review

In considering a Rule 12(b)(6) motion, federal courts require notice pleading, as opposed to the heightened standard of fact pleading. Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly*, 550 U.S. 554 and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must take three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the Complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 662).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Id.*; *See also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

The Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, the Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler*, 578 F.3d at 212; *see also Guirguis v. Movers Specialty Services, Inc.*, 346 Fed. App'x. 774, 776 (3d Cir. 2009).

In short, the Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him to relief. *Twomley*, 550 U.S. at 563 n.8.

IV. **Discussion**

A. *Count I: There are Insufficient Allegations in Plaintiffs' Complaint to Support a Cause of Action through 42 U.S.C. § 1983.*

a. *Insufficient Allegations Against County Defendants*

Count I of Plaintiffs' Complaint alleges that County Defendants and Defendants Cerra, Gilmore, and Poppa, individually and in their official capacities, acted under the color of state law to deprive Plaintiffs of their liberty interests and Constitutional rights, privileges, and immunities in violation of 42 U.S.C. § 1983. Doc. No. 1 ¶ 97. To state a 42 U.S.C. § 1983

claim, a plaintiff must: 1) allege the violation of a right, privilege or immunity secured by the Constitution or laws of the United States and 2) demonstrate that the alleged deprivation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

In support of their Motion to Dismiss, the Defendants allege: (1) that the County Defendants never took custody of A.B. and are not liable for alleged failure to protect A.B. from third-party criminal conduct and therefore, they did not violate any Constitutional right; (2) Plaintiffs cannot establish a Fourteenth Amendment claim because the County Defendants' conduct was reasonable and does not shock the conscience; and (3) the County Defendants are entitled to qualified immunity. The Plaintiffs' Brief in Response to Defendants' Motion to Dismiss Complaint (Doc. No. 14) alleges Defendants were acting under the color of state law, acted willfully, knowingly, and purposefully, with the intent to deprive the Plaintiffs of their liberty interests and rights, privileges and immunities. Doc. No. 14, 6.

The Court agrees with Defendants that Plaintiffs' factual averments do not establish a 42 U.S.C. § 1983 claim. Although Plaintiffs' Complaint does not allege that the County Defendants forcibly removed A.B. or that her parents were threatened or compelled to permit A.B. to remain with the O'Neal's, Plaintiffs now attempt to argue that Defendant Gilmore presented R.B. and V.B. with a "coercive" conversation where "an ultimatum" was given with "no other options" but to allow A.B. to reside at the O'Neal residence. *Id.* The Complaint details that Defendant Gilmore informed R.B. and V.B. that A.B. could "stay at a friend's house" or place in in foster care. Doc. No. 1 ¶¶ 27-28. At no time does the Complaint allege that "a friend's house" only refers to the O'Neal residence. R.B. and V.B. were given an option, not an "ultimatum." Plaintiffs now cite to the facts of *Croft v. Westmoreland County Children and Youth Services* to

oppose dismissal, however these facts are distinguishable because in *Croft* a father was ordered to leave his own home or his daughter would be physically taken away from the residence. 103 F.3d 1123 (3d Cir. 1997). In this instance, Defendant Gilmore gave Plaintiffs options towards the removal and placement of A.B., and R.B. and V.B. voluntarily agreed to allow her to stay at the O'Neal residence.

Indeed, the Complaint details that A.B.'s parents voluntarily agreed that A.B. could remain with the O'Neal's during the investigation. Doc. No. 1 ¶ 29. The County Defendants never had physical custody of A.B. and therefore, the parents were not deprived of their due process rights when no hearing took place pursuant to the Child Protective Services Law (CPSL), 23 Pa. C.S. §§ 6301-6386. Accordingly, Plaintiffs' Complaint fails to allege the violation of a Constitutional Right.

Furthermore, the County Defendants cannot be found legally liable for Barry O'Neal Jr. sexually assaulting A.B. By permitting her to remain in the O'Neal household, the County Defendant did not affirmatively create a danger that made A.B. more vulnerable than if the state had not acted at all. A.B.'s parents allowed A.B to stay at the O'Neal residence and therefore, Defendants cannot be liable for her harm. *See DeShaney v. Winnebago Cnty. Dep.'t of Soc. Servs.*, 489 U.S. 189, 195-96 (1989), *Bright v. Westmoreland Cnty.*, 443 F.3d 276 (3d Cir. 2006). A.B.'s unfortunate experience is the result of Barry O'Neal Jr.'s independent criminal conduct.

Moreover, there are no allegations to support any claim that the County Defendants were aware of A.B.'s sexual assaults in the O'Neal household. Therefore, even the alleged failure by County Defendants to act necessitates that there is no direct causal connection to impose liability on County Defendants. *See Bodine v. Warwick*, 72 F.3d 393, 400 (3d Cir. 1995).

Plaintiffs also allege a Fourteenth Amendment Due Process claim. Doc. No. 1 ¶ 97(d). To establish a Fourteenth Amendment due process claim, Plaintiffs must demonstrate that the government's actions "shock the conscience." *A.M. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 579 (3d Cir. 2004). As identified by Plaintiffs, there are three possible standards to determine whether the behavior of an agency's employees rise to the level of conscience-shocking: 1) deliberate indifference; 2) "gross negligence or arbitrariness that indeed shocks the conscience"; and 3) intent to cause harm. *Doe v. Fayette Cnty. Children and Youth Servs.*, 2010 WL 4854070, at *12 (W.D. Pa. 2010) (citing *Sanford v. Stiles*, 456 F.3d 298, 306 (3d Cir. 2006)).

In order to shock the conscience, "only the most egregious official" conduct can meet this threshold. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998); *see also Newman v. Beard*, 617 F.3d 775, 782 (3d Cir. 2010). The conduct must be "intended to injure in some way [and be] unjustifiable by any governmental interest. . ." *Cnty. of Sacramento*, 523 U.S. at 849. A court must "determine what level of conduct is egregious enough to amount to a constitutional violation and, then, whether there is sufficient evidence that [the defendant's] conduct rose to that level." *Chambers ex rel. Chambers v. School Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 190 (3d Cir. 2009). Here, the Defendants contend that a negligence claim can never shock the conscience because there is no intent to injure. Doc. No. 11, 9. Plaintiffs assert Defendants acted with gross negligence, but Plaintiffs' Complaint fails to allege any action that would rise to the level of gross negligence. Additionally, Plaintiffs reference Barry O'Neal Jr. holding a gun to A.B's head and threatening her not to tell anyone about their relationship to oppose dismissal. This is not persuasive because Plaintiffs failed to state that any police or law enforcement agency actually knew and reported this incident whatsoever. Accordingly, because Plaintiffs have not

demonstrated any of the three standards to demonstrate conscience-shocking behavior, Plaintiffs' due process claim must be dismissed.

Plaintiffs also contend that Defendants, Westmoreland and WCCB, both failed to properly train and supervise their caseworkers. *Id.* at 12. To establish a claim for liability based upon a failure to train, the following must be demonstrated: (1) an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of the potential for this unreasonable risk; (3) the supervisor was deliberately indifferent to the risk; and (4) the injury resulted from the policy or practice. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). Here, Plaintiffs' Complaint does not contain any specific allegations showing that Defendants have inflicted harm on any previous occasion due to failure to train or supervise their caseworkers. Therefore, a failure to train claim must be dismissed.

> b. *Duplicative Claims Against Individual Defendants Cerra, Gilmore, and Poppa in their Official Capacities Must be Dismissed.*

Count I of Plaintiffs' Complaint is against the County Defendants as well as the individual Defendants in their official and individual capacities. In support of its Motion to Dismiss, the Defendants allege that Plaintiffs' Complaint is a lawsuit against the public entity itself, thus Plaintiffs' Complaint against each individual Defendant Cerra, Gilmore, and Poppa in their official capacities is redundant and must be dismissed.[5] Doc. No. 10 at ¶¶ 28, 29 citing *McMillian v. Monroe Cnty.*, 520 U.S. 781 (1997), *Burton v. City of Philadelphia*, 121 F.Supp.2d

---

[5] Government officials performing discretionary functions are entitled to qualified immunity. The doctrine of qualified immunity involves a two-part test. See *Scott v. Harris*, 550 U.S. 372, 377 (2007). The Defendants are entitled to qualified immunity unless the Plaintiff demonstrates that both prongs have been satisfied. *Ashcroft v. al-Kidd* 131 S. Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). First, there must be "a violation of the constitutional right." *Scott*, 550 U.S. at 377. Second, that right must be "clearly established . . . in light of the specific context of the case." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

810, 812-13 (E.D. Pa. 2000), *Allan v. Montgomery Cnty.*, (E.D. Pa. Nov. 19, 2009), 2009 U.S. Dist. LEXIS 107937. Plaintiffs also admit that it is within the Court's discretion to dismiss these claims because of redundancy. Doc. No. 14, 12 citing *Burton v. City of Philadelphia*, 121 F.Supp.2d 810 (E.D. Pa. 2000). Therefore, Count I against Defendants Cerra, Gilmore and Poppa in their official capacities will be dismissed.

> B. Count II, V, and VI: Plaintiffs' Complaint is Insufficient to Establish a Cause of Action for the Intentional Tort Claims of Intentional Infliction of Emotional Distress, False Imprisonment, and Civil Conspiracy.

Count II of Plaintiffs' Complaint alleges that County Defendants and Defendants Cerra, Gilmore, and Poppa, caused Plaintiffs intentional infliction of emotional distress. Doc. No. 1 ¶ 110. Count V of Plaintiffs' Complaint alleges that County Defendants and Defendants Cerra, Gilmore, and Poppa, collectively caused the false imprisonment of A.B. in the O'Neal home. *Id.* at ¶ 128. Count VI of Plaintiffs' Complaint alleges civil conspiracy towards A.B. on behalf of County Defendants and Defendants Cerra, Gilmore, and Poppa. *Id.* at ¶ 131. In support of its Motion to Dismiss, Defendants allege that Plaintiffs' Complaint: 1) improperly includes claims of intentional torts which Defendants Westmoreland and WCCB are immune (Doc. No. 10 ¶ 34); 2) is inadequate as it fails to sufficiently support factual allegations of requisite state of mind towards its claims against County Defendants (*Id.* at ¶ 36); 3) fails to include sufficient allegations of willful misconduct claims against Defendants Cerra, Gilmore, and Poppa (*Id.* at ¶ 37); and 4) fails to mention any of the eight acts by a local agency or its employees under § 8542(b) of the Judicial Code that may result in the imposition of liability. *Id.* at ¶ 38.

Because subsection § 8542(a)(2) (pertaining to governmental immunity) specifically excludes acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct, local agencies are immune from suits for torts such as intentional infliction of

emotional distress, false imprisonment, and civil conspiracy. *Zernhelt v. Lehigh Cnty. Office of Children & Youth Servs.*, 659 A.2d 89 (Pa. Cmwlth. 1995). Therefore, Counts II, V, and VI must be dismissed against the County Defendants.

As to the individual Defendants, government employees cannot be immune from liability from intentional torts when their actions constitute willful misconduct. 42 Pa.C.S. § 8550, *Lancie v. Giles*, 572 A.2d 827, 830 (Pa. Cmwlth. 1990). Courts have held that willful misconduct in this context is synonymous with an "intentional tort." *Renk v. City of Pittsburgh*, 641 A.2d 289, 291 (Pa. 1994). Willful misconduct, for the purposes of tort law, has been defined by the Pennsylvania Supreme Court to mean conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied. *Id.*, see also *Evans v. Philadelphia Transp. Co.,* 212 A.2d 440 (Pa. 1965). Plaintiffs allege that Defendant Cerra warned R.B., by means of an answering machine message, that if he did not return his phone call, then he was going to pursue the initial sexual abuse allegations against R.B. even though he knew the allegations to be unfounded. Doc. No. 10 ¶ 70. Even taken as true, the Plaintiffs' averments do not demonstrate or rise to the level of conduct by any of the individual Defendants necessary to justify willful misconduct allegations.

Additionally, punitive damage claims against Defendants will be dismissed. Plaintiffs agree that punitive damages are not available against a municipality. Doc. No. 14, 15. Their Complaint fails to identify with specificity which Defendants they seek punitive damages from.

*C. Count III: Plaintiff's Negligence Claim against the County Defendants is barred by Governmental Immunity.*

Count III of Plaintiffs' Complaint alleges negligence against the County and Individual Defendants for: (1) failing to properly investigate the father's allegations; (2) improperly threatening to file an abuse charge and starting the investigation; (3) failing to terminate the

investigation when they learned it was unfounded; (4) failing to remove A.B. from the O'Neal's when: (a) they learned A.B. and Barry O'Neal, Jr. had a relationship prior to being placed in the home, (b) Defendant O'Neal failed to disclose A.B. and Barry O'Neal Jr.'s relationship, (c) failing to heed R.B.'s warnings about placing A.B. in Barry O'Neal Jr.'s house; and (5) failing to investigate the suitability of the O'Neal house. Doc. No. 1 ¶116 (a)-(g). In support of its Motion to Dismiss, Defendants allege that because Pennsylvania has not waived governmental immunity for agencies and officials who conduct negligent investigations, Plaintiffs have no cause of action in negligence against Defendants as a matter of law. Doc. No. 11, 16.

42 Pa. C.S. § 8542 establishes that a local agency or employee thereof may be liable for injuries caused to a person if both: (1) the damages would be recoverable under common law or a statute creating a cause of action and were caused by a person who didn't have a defense under § 8541 or § 8546 and (2) the injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his employment. Subsections 8542(b)(1)-(8) enumerate the acts by which a local agency may be liable, including vehicle liability and real property. Plaintiffs' averments do not belong to any of these categories and therefore, the Defendants cannot be held liable. *See Jones v. SEPTA*, 772 A.2d 435, 440 (Pa. 2001) ("because the legislature's intent in both the Sovereign Immunity and Tort Claims Act is to shield government from liability, except as provided for in the statute themselves, we apply a rule of strict construction in interpreting these exceptions"). Accordingly, Count III will be dismissed.

> D. *Count IV: Plaintiff's Complaint is Insufficient to Establish a Cause of Action for the State Law Negligence Claims.*

Because Plaintiffs' only remaining negligence claim, Count IV, is a state-law based claim, jurisdiction may be relinquished by this Court. The Court declines to exercise supplemental jurisdiction over the remaining state law claim. Accordingly, said state law claim

14

will be dismissed pursuant to 28 U.S.C. § 1367(c)(3), albeit without prejudice to Plaintiffs' ability to re-file these claims in state court. Also, the dismissal of Plaintiffs' state law claim should not work to Plaintiffs' disadvantage. *See* 28 U.S.C. § 1367(d) (providing for at least a thirty-day tolling of any applicable statute of limitation after the claim is dismissed so as to allow Plaintiff time to re-file her state law claims in state court).

## V. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss will be GRANTED. According to the United States Court of Appeals for the Third Circuit, "a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). Therefore, Plaintiffs' Complaint will be DISMISSED WITHOUT PREJUDICE.

An appropriate Order follows.

s/Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc:   All Registered ECF Counsel and Parties