IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

R.B. AND V.B.,

               Plaintiffs,                    11cv1519
                                              **ELECTRONICALLY FILED**

               v.

WESTMORELAND COUNTY,
WESTMORELAND COUNTY
CHILDREN'S BUREAU, JOHN CERRA,
KAREN GILMORE, KIMBERLY POPPA,
CHRISTINE O'NEAL, AND BARRY
O'NEAL, SR.,

               Defendants.

## MEMORANDUM OPINION RE: DEFENDANTS' RENEWED MOTIONS TO DISMISS (DOC. NOS. 43 AND 46)

### I.    Introduction

This case centers on actions taken regarding the alleged removal of a minor child from her family's home.  Doc. No. 42.  This Court's jurisdiction is based upon an alleged violation of a federal law.  Id.  Presently before the Court are Renewed Motions to Dismiss filed by: (1) Defendants Barry and Christine O'Neal ("the O'Neals"); and (2) Defendants John Cerra ("Cerra"), Karen Gilmore ("Gilmore"), Kimberly Poppa ("Poppa") ("Individual County Defendants"), and Westmoreland County and Westmoreland County Children's Bureau (collectively referred to as "County Defendants").  Doc. Nos. 43 and 46, respectively.  On February 21, 2012, this Court granted a Motion to Dismiss filed by Defendant Cerra, Gilmore, Poppa, Westmoreland County and Westmoreland County Children's Bureau and dismissed Counts I, II, III, and V of Plaintiffs' Complaint without prejudice.  Doc. Nos. 15 and 16.

Plaintiffs filed an Amended Complaint and subsequently both the County Defendants and the O'Neals filed Motions to Dismiss.  Doc. Nos. 18, 23, 25.  The Court granted both Motions to Dismiss with prejudice and marked the case closed.  Doc. No. 29.  Plaintiff appealed this Order. Doc. No. 30.

On June 19, 2013, this Court received the Mandate of the United States Court of Appeals for the Third Circuit that vacated the Order as to Plaintiffs' procedural due process claim and reinstated Plaintiffs' state law claims.  Doc. No. 34.  The Court's Order was affirmed in all other respects.  Plaintiff filed a Second Amended Complaint to conform with the Mandate and subsequently the County Defendants and the O'Neals filed their respective Motions to Dismiss which are the subject of this Memorandum Opinion.  Doc. Nos. 42, 43, 46.

**II.    Statement of Facts**

The following facts are taken as true solely for the purposes of this Memorandum Opinion:

R.B. (the father) and V.B. (the mother) are the parents of their then 15 year old daughter, A.B..  Doc. No. 42, ¶ 12.  On or about May 9, 2010, R.B. confronted A.B. with his suspicions that she was having a relationship with an older man.  Id.  A.B. ran away from home because of the confrontation.  Id. at ¶ 13.  R.B. called the Rostraver Township Police and reported that A.B. was missing.  Id. at ¶ 14.  A.B. was driven by a friend to a lot near the home of the O'Neal family: Barry Sr. (the father), Christine (the mother), and Barry Jr. (their then 20 year old son). Id. at ¶ 15.

A.B. was having a sexual relationship with Barry Jr.  Id. at ¶ 15.  Christine was aware that her son was having a sexual relationship with A.B..  Id. at ¶ 16.  Christine was afraid that the authorities would discover the relationship and devised a plan to keep A.B. in her home so that

2

A.B. would not tell the authorities or others about the sexual relationship.  Id. at ¶ 18.  This plan included creating a false story: that A.B.'s father, R.B., had raped A.B. and V.B. was aware of the rape.  Id. at ¶ 19.  Christine told A.B. that she needed to tell this false story to the police if she was to remain in the O'Neal home.  Id. at ¶ 20.  Barry Sr. was aware of this false story and that A.B. was asserting false allegations so that she could remain in the home.  Id. at ¶ 21.  Christine drove A.B. to the Rostraver Police Department and was present when A.B. falsely reported to Officer August that she had been sexually abused by her father.  Id. at ¶¶ 22, 23.  Police performed "some form of background check" on the O'Neal family and A.B. returned to the O'Neal home.  Id. at ¶ 25.

The Westmoreland County Children's Bureau opened an investigation into A.B.'s allegations and approved her placement in the O'Neal home.  Id. at ¶ 27.  Defendant Gilmore, a representative of the Westmoreland County Children's Bureau, telephoned R.B. and V.B. and informed them of A.B.'s location and that they were the subject of a child abuse investigation.  Id. at ¶ 27.  R.B. and V.B. were informed that A.B. was not permitted to stay in their home.  Id. at ¶ 29.  R.B. and V.B. agreed that A.B. could stay in the O'Neal home because she could not return to their home and they were told that foster care was the only other option.  Id. at ¶ 30.  R.B. and V.B. were not informed of any judicial review process and no such process occurred.  Id. at ¶ 31.

R.B. informed Defendants Gilmore and Cerra of his suspicion that A.B. and Barry Jr. were having a sexual relationship and that he had a record of phone calls, text messages, and other communications between the two.  Id. at ¶ 35.  On May 9, 2010, the day A.B. ran away from home, Christine informed Defendant Gilmore that Barry Jr. had "gone out with A.B.."  Id.  R.B. denied the child abuse allegations against him which were inconsistent and unsupported.

Id.  A.B. told Defendant Cerra that she had "made the allegations up" "two to three days after her removal."  Id.

A.B. was repeatedly sexually assaulted and raped by Barry Jr. while she stayed at the home.  Id. at ¶ 36.  Barry Jr. pulled a gun on A.B. and threatened her during one encounter.  Id. at ¶¶ 37-40.  A.B. was not abused or in imminent risk of serious bodily or physical injury except while she was in the O'Neal home.  Id. at ¶ 55.

On June 8, 2010, Defendant Cerra telephoned R.B. and told him to "take his daughter back."  Id. at ¶ 41.  R.B. was informed that Westmoreland County Children's Bureau would bring A.B. back to the home.  Id. at ¶ 45.  That same day, Christine informed A.B. that she had to leave the home.  Id. at ¶ 42.  Defendant Cerra told Christine to drive A.B. back to her parents' home, which she did.  Id. at ¶¶ 43-44.

After A.B. returned to her parents' home, Karen Collins ("Collins"), a contract caseworker for Youth Justice Works, which was contracted by the Westmoreland County Children's Bureau, came to the home.  Id. at ¶ 46.  A.B. told Collins that the same story that she had initially told police, *i.e.* that she had been abused by her father.  Id. at ¶ 47.  At a second meeting, a week later, A.B. told Collins that the allegations were false and that she had been sexually assaulted by Barry Jr. while staying in the O'Neal's home.  Id. at ¶ 48.  A.B.'s parents also learned that A.B. had been repeatedly sexually assaulted by Barry Jr. while she was staying in the home.  Id. at ¶ 49.  Barry Jr. was charged with various offenses and pled guilty to Statutory Sexual Assault, Indecent Assault on a Person Less Than 16 years of Age, Corruption of Minors, and Unlawful Contact with a Minor.  Id. at ¶ 50.  He was sentenced to a minimum of one year less than a day to two years less a day for Statutory Sexual Assault and three years probation for Unlawful Contact with a Minor.  Id. at ¶ 52.

### III.        Standard of Review: Federal Rule of Civil Procedure 12(b)(6)

In considering a Rule 12(b)(6) motion, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading.  Fed. R. Civ. P. 8(a)(2) requires only " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a Complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the Complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 675, 679).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief."  *Fowler*, 578 F.3d at 210.  "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Id.* at 210-11; *see also Malleus,* 641 F.3d at 560.

5

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler*, 578 F.3d at 212; *see also Guirguis v. Movers Specialty Servs., Inc.*, 346 F. App'x. 774, 776 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

**IV.     Discussion**

Plaintiffs, in their Second Amended Complaint, allege the following causes of action: (1) Count I: a federal procedural due process claim against Defendants Westmoreland County and Westmoreland County Children's Bureau; (2) Count II: a pendent state claim of intentional infliction of emotional distress against Defendants Cerra, Gilmore, and Poppa; (3) Count III: a pendent state claim of negligence against Defendants Cerra, Gilmore, and Poppa; (4) Count IV: a pendent state claim of negligence against Defendants Barry and Christine O'Neal; (5) Count V: a pendent state claim of false imprisonment against all individual Defendants; and (6) Count VI: a pendent state claim of civil conspiracy against Defendants Cerra, Gilmore, and Poppa. Doc. No. 42.

**A.  Motion to Dismiss by the O'Neals (Doc. No. 43)**

Plaintiffs allege causes of action of negligence (Count IV) and false imprisonment (Count V) against the O'Neals. Doc. No. 42. The O'Neals move this Court to dismiss both claims against them because: (1) the Court should decline to exercise pendent jurisdiction over both

6

claims; and (2) Plaintiffs have failed to establish a cause of action for false imprisonment (Count V).  Doc. No. 44.

i.      *Pendent Jurisdiction: Counts IV and V*

As recognized by the O'Neals, the Court previously declined to exercise jurisdiction over Plaintiffs' state law claims in its Memorandum Opinions addressing previous Motions to Dismiss.  Doc. Nos. 15 and 29.  The Court did so without elaboration.  Doc. Nos. 15, pg. 14 and 29, pg. 5.  ("The Court declines to exercise supplemental jurisdiction over the remaining state law claim.") ("The Court declines to exercise supplemental jurisdiction over the remaining state law claims.").  On appeal, the United States Court of Appeals for the Third Circuit reinstated the state claims and "provid[ed] the District Court the opportunity to reassess the exercise of supplemental jurisdiction in light of the remanded federal claim."  *R.B. v. Westmoreland Co.*, 12-2552, at pg. 10 (3d Cir. May 28, 2013).

28 U.S.C. § 1367(a) provides, in relevant part, that ". . . the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  Pendent jurisdiction, which is a type of supplemental jurisdiction, refers to the authority of the District Court to have "jurisdiction over nonfederal claims between parties litigating other matters properly before the court."  *Finley v. United States*, 490 U.S. 545 (1989).  A District Court has the authority to exercise jurisdiction over pendent state law claims because it acquires jurisdiction over a case or controversy in its entirety and it may exercise jurisdiction to decide other matters raised in the case over which it would not have jurisdiction if they were independently presented.  28 U.S.C. § 1367(a); *National City Mortgage Co. v. Stephen*, 647 F.3d 78, 85 (3d. Cir. 2011).  The Court has jurisdiction based upon Plaintiffs'

federal claim for violation of procedural due process (Count I) against Westmoreland County and Westmoreland County Children's Bureau.  Plaintiffs have advanced two state law claims against the O'Neals (Counts IV and V).  The O'Neals urge the Court to decline to exercise jurisdiction over Counts IV and V.

The Supreme Court of the United States has stated that a District Court may have jurisdiction if the state and federal claims derive from a common nucleus of operative fact and the claims are such that they would normally be expected to be tried in one case.  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).  The O'Neals cite the United States Court of Appeals for the Third Circuit's three-prong test to determine if pendent jurisdiction may be exercised.  The Court must determine whether: (1) it has constitutional power to determine the state law claim(s); (2) exercise of jurisdiction would violate a federal policy determination such as complete diversity; and (3) jurisdiction is appropriate in light of various factors including judicial economy, convenience, and fairness to litigants.  *Ambromovage v. United Mine Workers of America*, 726 F.2d 972, 989 (3d. Cir. 1984).  The O'Neals contend that pendent jurisdiction should not be exercised because Plaintiffs have failed to meet any of the three prongs of the test.  Doc. No. 44, 5.

First, Defendants contend the Court does not have the constitutional power to determine the state law claims because there is not a common nucleus of facts between the federal procedural claim against Westmoreland County and the Westmoreland County Children's Bureau and the state law claims asserted against them.  Doc. No. 44, 5.  The Court disagrees.  The basis of all of Plaintiffs' claims center on the alleged abuse that their daughter suffered in the O'Neal's home and how she came to stay in that household.  Doc. No. 42.  The factual averments and the evidence supporting such allegations pertain to the Defendants' actions and

inactions related to A.B.'s alleged abuse.  Id.  The exhibits and witnesses would be very similar

for both the federal claim against the County Defendants and the state law claims.  Therefore, all

of Plaintiffs' claim center on a common nucleus of facts.

Secondly, Defendants argue that pendent jurisdiction is improper because it would violate

the complete diversity requirement.  Doc. No. 44, 7.  The Court will not parse out claims against

individual Defendants to find that jurisdiction as to those particular claims are based upon

diversity.  This Court's jurisdiction for the entire case is based upon a federal question at Count 1

pursuant to 42 U.S.C. § 1983, and therefore complete diversity is not required.  28 U.S.C. §

1331.

Finally, Defendants contend that pendent jurisdiction should not be exercised by this

Court because it would not be in the interest of judicial economy.  Doc. No. 44, 8.  The Court

finds that it is in the interests of judicial economy to exercise pendent jurisdiction because, as

stated, all claims relate to a common set of facts.  Further, there is no indication that exercising

pendent jurisdiction would prejudice any party.  It would also be expected that all of Plaintiff's

claims would be litigated in the same proceeding.  As such, it is most appropriate to exercise

jurisdiction over these claims.

Therefore, the Court will exercise pendent jurisdiction over state law claims Counts IV:

Negligence and V: False Imprisonment.  Defendants' Motion to Dismiss (Doc. No. 43) as to

Counts IV and V will be DENIED.

*ii.      Count V: False Imprisonment*

Defendants also move to dismiss Count V: false imprisonment because they contend that

Plaintiffs have failed to sufficiently plead the necessary elements.  Doc. No. 44, 8-9.

Plaintiffs must establish the following elements to sustain a cause of action for false imprisonment: (1) A.B. was detained; and (2) the detention was unlawful. *Gwynn v. City of Phila.*, 719 F.3d 295, 304 (3d Cir. 2013) citing *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).

Defendants contend that Plaintiffs have failed to allege that A.B. was "detained" by the O'Neals. Doc. No. 44, 9. Taking the factual averments in Plaintiffs' Complaint as true, the cause of action for false imprisonment will not be dismissed. According to Plaintiffs, A.B. remained in the O'Neal's home because the story Christine O'Neal forced A.B. to tell the police left R.B. and V.B. with no other choice but for A.B. to remain there. Further, the O'Neals prevented A.B. from disclosing her relationship with Barry Jr. to the authorities. These actions effectively led A.B. and her parents with no choice other than to have A.B. stay with the O'Neals. Plaintiffs also sufficiently plead that this "detention" was illegal. At this early stage, these averments are sufficient to support a claim that A.B. was illegally "detained."

Therefore, the O'Neals' Motion to Dismiss (Doc. No. 43) as to Count V will be DENIED.

### B. *Motion to Dismiss by County Defendants (Doc. No. 46)*

Plaintiffs allege causes of action against the County Defendants for violation of a federal due process claim (Count I against Westmoreland County and Westmoreland County Children's Bureau) and pendent state law claims for intentional infliction of emotional distress (Count II), negligence (Count III), false imprisonment (Count V), and civil conspiracy (Count VI) against Defendants Cerra, Gilmore, and Poppa. Doc. No. 42.

Defendants move to dismiss all claims against them. Doc. No. 46. Defendants contend that: (1) Individual County Defendants are immune from suit because of qualified immunity; (2)

Plaintiffs have failed to plead a plausible procedural due process claim against Westmoreland County and Westmoreland County Children's Bureau (Count I); and (3) Plaintiffs have failed to sufficiently plead the necessary elements for intentional infliction of emotional distress (Count II), false imprisonment (Count V), and civil conspiracy (Count VI).  Doc. No. 47.

        i.    *Qualified Immunity*

Defendants argue that Individual County Defendants are immune from liability because of the doctrine of qualified immunity.  Qualified immunity is a defense from suit for government officials in performance of their discretionary functions and applies unless their conduct violates clearly established statutory or constitutional rights that a reasonable person would have known were being violated.  Doc. No. 47, 12 citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendants contend that the Court should find that the Individual County Defendants are entitled to qualified immunity because it "apparent" that Defendants did not violate rights that were clearly established at the time.  Doc. No. 47, 12 citing *Broadwater v. Fow*, 2013 U.S. Dist. LEXIS 68027, * 22 (M.D. Pa. May 14, 2013).

Specifically, Defendants argue that the relevant alleged actions, which occurred in 2010, did not violate Plaintiffs' rights because the United States Court of Appeals for the Third Circuit did not hold that parents have a procedural due process right to a hearing after the state removes their child until 2013.  Doc. No. 47, 13 citing *B.S. v. Somerset Cnty.*, 704 F.3d 250 (3d Cir. 2013).

The Court agrees with Plaintiffs that Defendants' argument rests on a determination that this Court may not make at this time, *ie.* whether the County took physical control of A.B..  Doc. No. 51, 4.  Defendants claim that in 2010, the time of the relevant actions, "federal district courts in the Third Circuit were holding that the due process hearing procedures in Pennsylvania's

Child Protective Services Law applied only where the government took physical custody of the child."  Doc. No. 47, 12.  By implication, Defendants argue that a due process hearing was not required because the government did not take physical custody of A.B..  Taking the facts of the case as true, as required, Plaintiffs have sufficiently pled that the Government had control over A.B..  Therefore, because Plaintiffs have pled that this control occurred without the requisite due process hearings, Defendants violated a clearly established right and are not entitled to qualified immunity.  *See R.B. v. Westmoreland County*, No. 12-2552, at pg. 9 (March 20, 2013) ("Because the amended complaint sufficiently demonstrated the exercise of governmental control over, or intrusion into, plaintiffs' familial relationships, and plaintiffs were afforded no process to challenge that exercise, dismissal, certainly at this juncture, [is] improper.").

Therefore, Defendants' Motion to Dismiss (Doc. No. 44) will be DENIED as to their affirmative defense of qualified immunity.

> ii.   *Due Process Claim Against Westmoreland County and the Westmoreland County Children's Bureau (Count I)*

Defendants contend that Plaintiffs have failed to sufficiently plead their claim for a violation of their due process rights because Defendants had reasonable grounds for their actions, which did not violate any established constitutional right.  Doc. No. 47.  The determination of whether the Defendants' actions were "reasonable" is not properly determined by this Court in the context of a Motion to Dismiss.  *See Dixon Ticonderoga Co. v. Estate of O'Connor*, 248 F.3d 151, 166 (3d Cir. 2001).  The Court finds that Plaintiffs have set forth more than "bald allegations" and "conclusory statement[s]," and have pled sufficient factual averments to support their due process claim at this stage.  See Doc. No. 42, ¶¶ 69-73.  Specifically, Plaintiffs set forth various policies and practices that they allege lead to A.B.'s unconstitutional removal from the home including that case workers are instructed to "remove children who are subjects of child

abuse investigation from their homes and separate them from their parents without providing a

hearing . . . particularly in case where evidence of abuse or risk is marginal thereby avoiding

judicial review of their conduct and the opportunity of the children and parents to be represented

by counsel . . . ." Doc. No. 42, ¶ 71.

     Therefore, Defendants' Motion to Dismiss (Doc. No. 46) as to Count I: Federal Due

Process Claim will be DENIED.

     *iii.     Pendent State Law Claims against Caseworker Defendants (Counts II-VI)*

     *a.     Intentional Infliction of Emotional Distress (Count II)*

     Defendants contend that Plaintiffs have failed to plead that their conduct was "extreme

and outrageous" as required. Doc. No. 47, 7 quoting *Rinehimer v. Luzerne Co. Cmty. Coll.,* 539

A.2d 1298, 1305 (Pa. 1988). Instead, Defendants argue that Plaintiffs merely set forth bald

allegations such as "intentionally" and "recklessly." Doc. No. 47, 9.

     Plaintiffs' Second Amended Complaint sets forth sufficient averments to support their

claim under the applicable standard of review. Doc. No. 42. Specifically, Plaintiffs' Second

Amended Complaint sets forth specific allegations against all Defendants, including that they

repeatedly ignored information that A.B. was living with an adult male with whom she was

having a sexual relationship. Id. At this early stage, Plaintiffs have sufficiently plead their claim

for intentional infliction of emotional distress (Count II), therefore, Defendants' Motion to

Dismiss (Doc. No. 46) as to Count II will be DENIED.

     *b.     False Imprisonment (Count V)*

     Defendants argue that Plaintiffs' claim for false imprisonment must be dismissed because

Plaintiffs "agreed" to allow A.B. to stay at the O'Neal home, there was no action on their part to

confine A.B.. Doc. No. 47, 11. However, Plaintiffs have set forth sufficient allegations to

demonstrate that A.B. was "confined" to the O'Neal household because her parents were not given a choice of where she could live and had no control over her whereabouts after she was removed from the family home.  Doc. No. 42, ¶¶ 28-29.

These allegations are sufficient at this early stage.  Therefore, Defendants' Motion to Dismiss as to the claim for Count V: False Imprisonment will be DENIED.

> c. *Negligence and Civil Conspiracy (Counts III and VI)*

Plaintiffs stipulate to the dismissal of Counts III: Negligence and Count VI: Civil Conspiracy.  Therefore, Defendants' Motion to Dismiss (Doc. No. 46) will be GRANTED WITHOUT OBJECTION as to these Counts.

**V.      Conclusion**

At this stage of the litigation, Plaintiffs have pled sufficient facts to survive Defendants' Motions to Dismiss.  Doc. Nos. 42, 43, 46.  Further, the Court will exercise jurisdiction over Plaintiffs' state law claims because universal resolution of this conflict is in the interests of judicial economy.  Plaintiffs' claims for Negligence (Count III) and Civil Conspiracy (Count VI) will be dismissed without objection.

An appropriate Order follows.

s/ Arthur J. Schwab<br>
Arthur J. Schwab<br>
United States District Judge

cc:      All Registered ECF Counsel and Parties